**WILLIAM H.L.**, Respondent Below, Appellant,

v.

**VIRGINIA L.L.**, Petitioner Below, Appellee.

Supreme Court of Delaware.

Submitted: Oct. 12, 1982.
Decided: Jan. 18, 1983.

Robert C. Wolhar, Jr. (argued), of Wolhar & Moore, Georgetown, for respondent-appellant.

Eugene H. Bayard (argued), of Wilson, Halbrook & Bayard, Georgetown, for petitioner-appellee.

Before HERRMANN, C.J., QUILLEN, HORSEY and MOORE, JJ., and STIFTEL, President Judge, constituting the Court en Banc.

QUILLEN, Justice:

This is an appeal from a decision of the Family Court. Appellee, (wife), and appellant, (husband), were married in 1964 and divorced in 1981. At the time of the decision the husband was 38 and the wife was 37 years of age. He had a gross monthly income of approximately $1,831.28 per month; she earned about $780.00 gross per month. The parties have two children, then ages 11 and 9 years. Custody was resolved in the wife's favor in a prior hearing. The husband has been ordered to pay $380.00 per month in support. The wife has not requested alimony. Marital assets consist of a marital domicile and its contents, pension plans, vehicles, term life insurance and a thrift plan. In addition, several parcels of real estate were inherited by the husband during the marriage. The value of the marital property is not disputed.

The inherited parcels of real estate were devised under the husband's father's will in common ownership with his mother and/or his brother. The most valuable of these properties is a one-half interest in a two hundred acre farm, valued at $162,350.00, from which he receives $2,132.00 in annual rent. The inherited property makes up about 75% of the marital assets. The wife has an expectancy of a substantial inheritance from her family but this exists only in the indefinite future. She, however, is securely employed in her father's business. Both parties expressed the desire to keep the inherited properties in the husband's family.

The Family Court assigned the marital home and most of its contents, a car, a pension plan and a life estate in the farm to the wife. The life estate, however, was to continue only until the wife remarried or cohabitated. Although the precise mathematics is not clear, the Court indicated it calculated the value of the life estate by multiplying the farm income by the wife's remaining life expectancy. The Court assigned the remainder interest in the farm, the other inherited properties, a car and a truck, insurance, the thrift plan and a pension plan to the husband. The assets were divided 54% to the wife and 46% to the husband.

The Family Court did not hear oral argument relating to the creation of a life estate as a method of property division. However, as a result of both parties' desire to keep the inherited properties in the husband's family, the Court did request supplemental memoranda on the means of dividing those properties. It specifically asked for advice on restricting the "profits of the farm for the benefit of wife and children, until the children are through college (if they attend) and the wife remains single (legal and moral) until the children are age twenty-one (21)". In response to this request the husband advised the Family Court that Delaware case law precluded the creation of a trust in marital property for the benefit of the children. The Court evidently based its calculation of the value of the life estate and remainder on the declared revenues of the property, using a mortality table submitted by the wife in response to the request for supplemental advice.

The husband appealed, arguing that the Family Court exceeded its jurisdiction in the creation of the conditional life estate, citing *Husband C. v. Wife C.,* Del.Supr., 391 A.2d 745 (1978). He also contended that the Court abused its discretion in the manner of property division. In the latter regard, he specifically alleges that the Court used incorrect data and evidence from without the record to value the property division, that the Court improperly allocated

the burden of proof in its award of a life estate in land titled in his name, and that the Court created the property division on an alimony or support rationale while neither of those considerations was at issue. There is no cross-appeal.

■ The underlying issue addressed in this appeal is the authority of Family Court to create a life estate as a means of dividing marital property. Title 13 *Del.C.* § 1513(a) controls the division of marital property. That statute states as follows:

§ 1513. Disposition of marital property; imposition of lien; insurance policies.

(a) In a proceeding for divorce or annulment, the Court shall, upon request of either party, equitably divide, distribute and assign the marital property between the parties without regard to marital misconduct, in such proportions as the Court deems just after considering all relevant factors including:

(1) The length of the marriage;

(2) Any prior marriage of the party;

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties;

(4) Whether the property award is in lieu of or in addition to alimony;

(5) The opportunity of each for future acquisitions of capital assets and income;

(6) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker or husband;

(7) The value of the property set apart to each party;

(8) The economic circumstances of each party at the time the division of the property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the party with whom any children of the marriage will live;

(9) Whether the property was acquired by gift, bequest, devise or descent;

(10) The debts of the parties; and

(11) Tax consequences.

Appellant cites *Husband C. v. Wife C.,* Del.Supr., 391 A.2d 745 (1978), as well as the statute, in support of his contention that the effect of Family Court's order was to use the mechanism of a life estate to place the inherited property in trust for the children or to provide a substitute for unrequested alimony for the wife.

In *Husband C. v. Wife C.,* the Family Court made the adult children of the parties the trustees of the marital property. This Court held that Family Court does not have statutory power to create a trust as a form of property division. The word "equitable" in 13 *Del.C.* § 1513(a) was determined to be used with reference to the "power of the Court to divide property according to justice and fairness", not in reference to the power to create equitable, as opposed to legal, interests. *Id.* at 746. This Court further explained that the statute limits the property division to the parties, the former spouses, whereas a "trust, by definition, grants to nonparties ownership rights and control over property, while cutting off control by the grantor. Accordingly, because a trust involves non-parties in the disposition of marital property, it is not contemplated by the Statute and is impermissible thereunder." *Ibid.*

We find that *Husband C. v. Wife C.* does not govern under the facts of this case. The Court below was aware of the significance of *Husband C. v. Wife C.,* as it noted in its opinion that "*C. v. C.* 391 A.2d 745 is intended to be restricted to third parties i.e. adult children being in that category." Thus, Family Court here did not intend to create a trust but merely divided the marital asset into a legal life estate in the wife with the remainder in the husband. Moreover, there is no reason not to give effect to that intention. As one outstanding treatise on trusts says:

"... the majority of courts, where not controlled by statute, hold that a life tenant is not a trustee for the remainderman, even though he owes the latter

duties which are to a certain extent similar to the obligations of a trustee."

Bogart, Trusts and Trustees, § 27, 222–23 (2d ed. 1965).

"The status of life tenant and remainderman lacks both the kind of division of ownership found in trust and the broad fiduciary nature of that latter relationship. Legal life tenant and remainderman have successive several interests in the same property. Trustee and beneficiary have simultaneous interests in the same subject-matter."

*Id.* at 228.

A life estate is a "freehold estate, not of inheritance, but which is held by the tenant for his own life . . . . The chief incidents of life estates are a right to take reasonable estovers, and freedom from injury by a sudden termination . . . ." 1 Bouvier's Law Dictionary 1076 (rev. 3d ed. 1914). It is "[a]n estate whose duration is limited to the life of the party holding it, or some other person . . . . 'A devise of a life estate to terminate upon devisee's remarriage constitutes a devise of a "life estate". (citation omitted).'" Black's Law Dictionary 1074 (rev. 4th ed. 1968).

A life estate is a recognized property interest. *See* 1 Tiffany, The Law of Real Property, §§ 49–71 (3rd ed. 1939). Therefore, the Family Court had the authority to make a division of marital property into two distinct legal interests.

■ Appellant argues alternatively that even if *Husband C. v. Wife C.* was not violated, the Family Court impermissibly transferred property titled in his name to his wife without requiring that she make a request for that property or meet a preponderance of the evidence test as to its value, in accord with the command of *Husband R.T.G. v. Wife G.K.G.*, Del.Supr., 410 A.2d 155 (1979). We do not agree. We note that the record reflects that the wife requested an assignment of property from the inherited estate, as did the husband. Further, there was no dispute as to the income or value of the property in question. Thus, the record demonstrates that the basic criteria for the transfer of such property was met and there was no abuse of discretion in such a transfer. *Husband R.T.G. v. Wife G.K.G.*, 410 A.2d at 159.

■ However, Family Court did abuse its discretion by exercising its statutory authority for confusing as well as questionable purposes. The authority of Family Court to divide property arises solely from statute, *Husband C. v. Wife C.*, 391 A.2d at 746. Although the Court has broad equitable powers, *Wife B. v. Husband B.*, Del. Supr., 395 A.2d 358, 359 (1978), it must consider the 13 *Del.C.* § 1513(a) factors that are relevant to the case, *Husband R.T.G. v. Wife G.K.G.* Appellant argues that the Family Court's express rationale for creation of the life estate in the farm property, "to preserve the ancestral family farm from sale, separate the parties from the liabilities of alimony, and preserve for the children under 13 *Del.C.* § 513(10) (if rents be personal property) and (7) a source of supplemental support" is an improper substitution of alimony and/or child support conditions for the 13 *Del.C.* § 1513(a) factors. *See* 13 *Del.C.* § 1512 and 13 *Del.C.* §§ 513, 514.*

* § 1512. Alimony in divorce and annulment actions; waiver or release.

(a) The Court may grant alimony for a dependent party as follows:

(1) Temporary alimony for either party during the pendency of an action for divorce or annulment;

(2) Alimony for a respondent commencing after the entry of a decree dissolving an irretrievably broken marriage characterized by mental illness; or

(3) Alimony for a petitioner, or for a respondent who does not qualify for alimony under paragraph (2) of this subsection, commencing after the entry of a decree of divorce or annulment but not to continue for more than 2 years after marriage dissolution unless the parties were married for more than 20 years.

(b) A party is dependent if the party or someone on behalf of the party shall aver in an affidavit of dependency filed in the action and shall prove by a preponderance of the evidence that such party:

(1) Is dependent upon the other party for support and the other party is not contractu-

Admittedly, our statute requires that the Family Court consider the effects of support or alimony in making its property division award, see 13 *Del.C.* § 1513(a)(4) and

ally or otherwise obligated to provide that support after the entry of a decree of divorce or annulment;

(2) Lacks sufficient property including any award of marital property, to provide for the party's reasonable needs; and

(3) Is unable to support himself or herself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

(4) Duration of the marriage;

(5) Age, and the physical and emotional condition of respondent;

(6) Ability of petitioner to meet his or her needs while meeting those of respondent; and

(7) Tax consequences.

(c) The alimony order shall be in such amounts and for such time, except as limited in time under subsection (a) of this section, as the Court shall deem just without regard to marital misconduct and after considering all relevant factors justified by the evidence, including:

(1) Financial resources of the party seeking alimony including marital property apportioned to him or her, and his or her ability to meet his or her needs independently, including the extent to which a provision for support of a child living with such party includes a sum for that party as custodian;

(2) Time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment;

(3) Standard of living established during the marriage;

(4) Duration of the marriage;

(5) Age, and the physical and emotional condition of the party seeking alimony;

(6) Ability of the other party to meet his or her needs while meeting those of the party seeking alimony; and

(7) Tax consequences.

(d) A party who has contractually waived or released his or her right to alimony shall have no remedy under this section.

§ 513. Judgment; order of support; other terms.

Where the duty of support has been determined to exist, the Court may:

(1) Order the defendant to pay a certain sum periodically into the Court or directly to a dependent, his guardian, custodian, or trustee, for his support for so long as the obligation of support shall exist;

(2) Order the defendant to pay a specific total amount into the Court or directly to a dependent, his guardian, custodian or trustee, in a lump sum or in such stated periodic amounts as the Court deems proper;

(3) Order the defendant to pay directly to the obligee the cost of prenatal and postnatal medical, hospital, and other lying-in expenses incident to the birth of a child;

(4) Order the defendant to pay the expenses of litigation including reasonable counsel fees incurred by a petitioner;

(5) Enforce its order by attachment of the defendant or by sequestration of property;

(6) Enter such other orders as the Court of Chancery heretofore possessed the power to enter, and as the interests of the parties may require, including but not limited to orders of custody and visitation;

(7) Order the defendant to move from the family home, even though titled in defendant's name alone or jointly with someone else, and not to live there for a reasonable period of time so that his or her spouse and/or child or children of the marriage might live there and enjoy the family home as an element of support;

(8) Enjoin the defendant from molesting or disturbing the peace of his or her spouse and/or child or children of the marriage for whom defendant is obliged to provide support;

(9) Restrain defendant from transferring, encumbering, concealing or in any way disposing of any property except in the usual course of business or for the necessities of life, and, if so restrained, requiring him or her to notify any person to whom he or she has an obligation of support, or such person's guardian, custodian or trustee, of any proposed extraordinary expenditure and to account to the Court for all extraordinary expenditures made after the order is issued;

(10) Order the defendant to permit his or her spouse and/or child or children of the marriage to have the use of designated personal property and/or fixtures, even though titled in defendant's name alone or jointly with someone else, upon such terms and conditions as the Court may impose, as an element of support.

§ 514. Determination of amount of support.

In determining the amount of support due to one to whom the duty of support has been found to be owing, the Court, among other things, shall consider:

(1) The health, relative economic condition, financial circumstance, income, including the wages, and earning capacity of the parties, including the children;

(2) The manner of living to which the parties have been accustomed when they were living under the same roof;

(3) The general equities inherent in the situation.

**332**

(8). Nevertheless, the Court's confusion of the child support factors found in 13 *Del.C.* § 513(7), (10) with the § 1513(a) property division factors renders its exercise of its § 1513 authority improper. Further, the lower Court's decision to condition the wife's portion of the inherited property on an absence of remarriage or cohabitation changed the arguably fair apportionment, making it speculative. Even though remarriage is an event which must be considered in any divorce settlement, *Winter v. Winter,* N.J.Super., 162 N.J.Super. 456, 393 A.2d 593, 598 (1978), *Hamblett v. Lewis,* N.H. Supr., 114 N.H. 258, 319 A.2d 629 (1974), and perhaps alluded to in § 1513(a)(3), (4) and (5), total divestment of property upon such considerations, especially when cohabitation is equated with remarriage, sounds peculiarly like alimony or support and becomes improper in relation to the spectrum of considerations in a division of marital assets. *Husband M v. Wife M,* Del.Supr., 321 A.2d 115 (1974). *See e.g.* 13 *Del.C.* § 1512 as to factors relevant to an alimony award. As a result of these conditions, the wife could subsequently be divested of her proportionate share by events unrelated to any property division factor.

Further, alimony considerations were inappropriate here. 13 *Del.C.* § 1512(b) clearly requires that an affidavit of dependency must be filed prior to an award of alimony. No affidavit was filed in the case nor was alimony ever requested by the appellee. Therefore, those considerations in the property division order were certainly not warranted here.

Finally, in addition to the preceding problem, Family Court failed to establish in the record for review its method of calculating the value of the life estate and the remainder interest. *Husband M v. Wife D,* Del. Supr., 399 A.2d 847, 848 (1979). Neither side was given a full opportunity to express its views and the Court's own reasoning is not set forth with sufficient precision to permit review.

Therefore, for the foregoing reasons, the decision of the Family Court must be re-versed and the case remanded for such proceedings as are deemed necessary or desirable in light of this opinion.